197 So. 754

ZIEMER et al. v. CITY OF NEW ORLEANS et al.

No. 35791.

June 28, 1940.

Rehearing Denied July 18, 1940.

H. W. & H. M. Robinson, of New Orleans, for plaintiffs, appellants and appellees.

Francis P. Burns, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for defendants and appellants.

PONDER, Justice.

This is an appeal from a judgment restoring the pay of the members of the Fire Department of the City of New Orleans to the basis on which they were paid in the years 1929 and 1930.

The plaintiffs, about 620 members of the Fire Department of the City of New Orleans, instituted this suit against the Board of Commissioners of the Fire Department of the City of New Orleans and the City of New Orleans, seeking to have their pay restored to the basis on which they were paid in the years 1929 and 1930, and to recover a large amount of back pay which constituted the difference between what they were actually paid after the year 1930 and the amount they received in the years 1929–1930.

The plaintiffs' petition is somewhat lengthy and we will only recite in effect what is contained in the allegations necessary to the determination of the issues presented herein, viz.:

During the years 1919 and 1920, the City appropriated $673,690.80, each year, for the support of the Fire Department, and the sums of $656,529.38 and $663,731.48, respectively, were used for that purpose. At that time members of the fire force of the City were paid monthly salaries as follows: Laddermen, pipemen, hosemen $100; tillermen $106.25; engineers $118.75; lieutenants $111; captains $125. An amendment to the Constitution of this State was adopted in 1921, being Article 14, Section 25, authorizing the City to levy a special tax not exceeding 2 mills on all the taxable property in the City, the avails of which was dedicated to the maintenance of a double platoon system in the Fire Department, a triple platoon system in the Police Department, and for an increase in the pay of the officers and men in the departments. After the amendment went into effect the Board of Commissioners in 1921 created the two platoon system and raised the salaries of all the members of the Fire Department, with some exceptions as to new appointees. It is alleged that all the statutes pertaining to the Fire Department make it the mandatory duty of the City to adequately maintain an efficient fire department. The City has never segregated the proceeds of the tax but has merged them with its general funds and has diverted part of the proceeds to other uses, thereby neglecting to pay the members of the Fire Department the amount of the appropria-

tions made in preceding years plus one-half of the tax. The City appropriated an amount each year equal to its former appropriation, plus only part of the proceeds of the tax. Section 25 of Article 14 of the Constitution was amended in 1928, increasing the tax to 3 mills for the support of the Fire and Police departments. The salaries of members of the Fire Department were increased on January 1, 1930, whereby the privates or laddermen received $157 a month and the other members received a proportionate increase in their salaries. Since the year 1933 the City has appropriated an amount less than its prior appropriations plus one-half of the proceeds of the tax. It is alleged that various reductions were made in the salaries of the members of the Fire Department since that time until 1935 and that reductions have remained in effect from that date.

The petitioners pray that the one-half of the avails of the excess over 2 mills of the tax be segregated and applied exclusively to the payment of increases in their salaries; that the City be ordered to appropriate annually an adequate sum to maintain the department in addition to the avails of one-half of the excess over the 2 mill tax; for the restoration of their pay to the basis prevailing in the years 1929–1930; and for an auditor to be appointed to ascertain the amount of the back pay due them and report same to the court.

The defendants interposed a plea of estoppel to the claim for back pay on the ground that, if there was an improper reduction in the salaries, the plaintiffs are estopped from making any claim for reim-

bursement because they have accepted their pay every fifteen days, as the amounts were reduced, from January, 1935, up to the present time, without protest.

The answer of the defendants is in effect a denial of the plaintiffs' claims. The City averred that it had appropriated and paid the Board of Commissioners which in turn had paid the plaintiffs all that was due them.

On trial, the lower court rendered judgment against the City, ordering and directing that one-half the proceeds derived from the 1 mill tax, provided for in the constitutional amendment of 1928, be segregated and kept in a separate account, and paid monthly to the Board of Commissioners for the purpose of increasing the pay of the members of the department above their pay in 1928; that the proceeds of the 2 mill tax provided for in the constitutional amendments of 1921 and 1928 be segregated and kept in a separate account, and the proportion thereof of the Fire Department paid monthly to the Board of Commissioners; that the City appropriate annually out of its general fund a sum adequate to maintain the Fire Department, and in no event, shall that amount be less than was required for the maintenance of such department prior to 1921; that the City place in the separate accounts of the segregated millage an amount sufficient to satisfy the judgment for increased pay since October 6, 1939, and pay same to said Board of Commissioners, and from and after the date of the judgment to segregate the millage and pay same monthly as above directed. The court gave judgment against

the Board of Commissioners ordering it to distribute the avails of the ½ mill tax as an increase in the wages of the members of the Fire Department, that the increase be a per capita increase, and that it be added to the rates of pay which were in existence prior to the 1928 constitutional amendment, so as to make the monthly rates of pay from October 6, 1939, as follows: Laddermen and hosemen $157.50; tillermen and chauffeurs $163.75; lieutenants $168.75; engineers $176.50; captains $182.50; and other grades at the similar rate of $32.50 plus the wage prior to 1928. The judgment provided that the amount derived from the ½ mill tax in future years be distributed in the amounts over or under $32.50 per month as lower or higher assessments may vary the amount available. Judgment was rendered in favor of the defendants maintaining the plea of estoppel by laches, insofar as it affected the demands for back pay, and rejected their claims for such.

The plaintiffs and the defendants have both appealed from the judgment.

It appears from the record that the monthly salaries of the officers and men of the Fire Department, fixed in compliance with Act 58 of 1910, were: laddermen, pipemen and hosemen $70; lieutenants $75; engineers $85; and captains $85. In 1919 and 1920 the laddermen, pipemen and hosemen received a monthly salary of $100; tillermen $105; lieutenants $105; engineers $115; and the captains $120. In 1921, the year the constitutional amendment of 1921 went into effect, the salaries were increased to the following amounts per month: lad-dermen, pipemen and hosemen $125; tiller-men, chauffeurs, and lieutenants $131.25; engineers $143.75, and the captains $150. This same monthly rate of pay was followed from the year 1922 through the year 1928. In the year 1929, after the constitutional amendment of 1928, they received the following monthly pay: laddermen, pipemen and hosemen $157; tiller-men and chauffeurs $163.25; lieutenants $168; engineers $175.75 and the captains $182. This rate of pay was followed till August 1930, when the salaries were subjected to a 10% reduction from August 15, 1930 through December 31 of that year. In 1931 the salaries were at the same rate as of the year 1929 except for two months when a 5% deduction was made for the benefit of welfare relief. In 1932 the salaries were at the same rate as of the year 1929 up to October 16, 1932, at which time they were reduced 20% through December 31, 1932. During the year 1933 the salaries were reduced 10% from the rate of pay of the year 1929. Beginning February 1, 1935, through December 31, 1939, the rate of monthly pay, as fixed by the Board of Commissioners, was as follows: laddermen, pipemen and hosemen $136.80; tillermen and chauffeurs $142.43; lieutenants $146.70; engineers $153.68; and captains $159.30. With the exception of the payrolls of the second half of August, 1930, and the first half of January, 1935, all of the members of the Fire Department have signed all payrolls without protest. The two above excepted payrolls were signed under protest.

The annual appropriation for the years 1919 and 1920 for the maintenance of the

Fire Department was $673,690.80 and in the year 1938 the appropriation was $1,-200,000. The estimated receipts derived from one-half of the 1 mill tax in 1938 was $210,733.01. The estimated return of half of the 2 mill. tax in 1938 was $421,-466.02. The appropriation in 1938, after deducting the proceeds of the tax, would amount to $567,800.97. In other words, the appropriation in 1938, after deducting the proceeds of the tax, was far short of the annual appropriation of the years 1919 and 1920, prior to both amendments to the Constitution.

Act 78 of 1920, adopted as a constitutional amendment and incorporated in the Constitution of 1921 as Section 25 of Article 14, reads: "In addition to such other taxes as the City of New Orleans is now, or may be hereafter, authorized to levy, said city shall levy annually a special tax, not exceeding two mills on the dollar, on all taxable property in said City, as assessed and valued for City taxation purposes. The avails of said special tax are hereby dedicated to the maintenance of a double platoon system in the fire department and a triple platoon system in the police department of said City and for an increase in the pay of the officers and men in said departments, respectively, and shall be used by said City exclusively for said purposes, respectively, according to such appointment as said City may make from time to time."

Section 25 of Article 14, as amended by Act 260 of 1928, reads: "In addition to such other taxes as the City of New Orleans is now, or may be hereafter, author-ized to levy, said City shall levy annually a special tax, not exceeding three mills on the dollar, on all taxable property in said City, as assessed and valued for city taxation purposes. The avails of said special tax are hereby dedicated to the maintenance of a double platoon system in the Fire Department and a triple platoon system in the Police Department of said City, and for an increase in the pay of the officers and men in said departments, respectively, and shall be used by said City exclusively for said purposes, respectively, according to such apportionment as said City may make from time to time; provided, however, that one-half the avails of said tax in excess of two mills shall be used exclusively for the purpose of an increase in the pay of officers and men in the Fire Department of said City, while the other half shall be used exclusively for the purpose of an increase in the pay of officers and men in the Police Department of said City.

The defendants contend that the lower court erred in its interpretation of Section 25, as amended by Act 260 of 1928, in holding that the half mill of the tax should be used exclusively to increase the salaries of the members of the Fire Department over and above the amounts they were receiving at the time this latter amendment went into effect. The defendants contend that there is no duty imposed upon the City to appropriate out of the general fund an amount adequate to maintain the Fire Department, and in no event, less than was required for such maintenance prior to 1921, and that the amend-

ment contains no provision making it the mandatory duty of the City to so do. The plaintiffs urge the affirmation of the judgment of the lower court in this respect.

■ Undoubtedly the Legislature was cognizant of the salaries that the members of the Fire Department were receiving at the times that both Acts were passed to amend the Constitution, and in each instance felt that the salaries were insufficient because in both instances provisions were made to increase them. Section 25, as amended by Act 260 of 1928, contemplates raising or increasing the salaries. The Section, as amended, provides in effect that half a mill of the tax shall be used exclusively for an increase in the pay of the officers and men in the Fire Department. The Legislature must have been cognizant of the apportionment of the 2 mill tax authorized by Act 78 of 1920, which was adopted and made Section 25 of Article 14 of the Constitution of 1921. Prior to the constitutional amendment of 1921 the City maintained the Fire Department. As we take it the amendment of 1921 provided means to increase the department to a two platoon system and to increase the pay of the men. The City levied the tax for the special purposes and used the funds derived from it as designated. In our opinion the amendment contemplated that the City would continue to maintain the department in the same manner as it had before and would use the funds derived from the tax to increase the services of the department and the pay of the men. To say the least, the City availed itself of the provisions of this Section. Also, when Section 25 was

amended in 1928 the City availed itself of its provisions and levied the tax. Then, how can it be said that the City was not cognizant of the fact that it should maintain the Fire Department in the same manner, since the City availed itself of the amendments for increasing the services of the department and the pay of the firemen? The amendment of 1928 undoubtedly contemplated an appropriation of an additional amount from the general fund equal to the prior appropriation. This conclusion is evident from the significant language used in the amendment, viz.: "shall be used exclusively for the purpose of an increase in the pay."

■ We are of the opinion that the distribution of the half mill on a per capita basis is proper under the circumstances in this case. Section 25 does not provide in what manner the increases are to be made in the salaries, and it appears that a per capita increase would be fair and equitable. The plaintiffs are satisfied with this method and we do not see how the defendants can complain. However, there seems to be some error in the judgment as to the computation of the avails of the half mill. Be that as it may, there is no necessity to make the computation. If the judgment is amended by ordering the avails of half a mill of the tax distributed monthly on a per capita basis it would be in line with the finding of the lower court. In this respect we believe the judgment should be amended.

■■ The defendants contend that the lower court erred in ordering the segregation of the proceeds of 2 mills of the tax

and the segregation of 1 mill of the tax. Counsel for the defendants have not furnished us with any authorities in support of this contention. Section 25, as amended, provides for a special tax to be used for special purposes. It is stated therein that half a mill of the tax shall be used exclusively for an increase in the pay of the members of the Fire Department. While the Section does not in so many words state that the millage shall be segregated and kept in a separate account, yet it contemplates such because the millage is dedicated to certain purposes. Where the funds are dedicated to a certain purpose they cannot be intermingled with other funds and used indiscriminately but must be applied as dedicated. In the case of State ex rel. Brittin v. City of New Orleans, 109 La. 110, 33 So. 102, wherein a special tax was involved, it was held to the effect that an account of the funds must be kept separate and apart. Moreover, Act 20 of the First Extra Session of 1935, Section 17.1, provides that the avails of this tax shall be segregated in a special account and used exclusively for the purposes provided for in Section 25, as amended, of Article 14 of the Constitution, and provides a penalty for the violation thereof. Counsel for the defendants contend that this Act cannot be reconciled with Act 340 of 1936, which was adopted as a constitutional amendment and is now Section 24 of Article 14 of the Constitution. Section 24 does not appear to contain any language to indicate that the funds derived from this millage may be diverted from the purposes for which they were dedicated or that the taxes may be intermingled with other funds. As we take it, Section 24 merely authorizes the City to borrow money and pledge the avails of the tax. Since the tax is dedicated to certain purposes it is our opinion that the segregation of the proceeds therefrom was contemplated.

The defendants contend that the court erred in ordering the City to appropriate out of the general fund a sum adequate to maintain the department, and in no event, an amount less than that required in 1921. They contend that unless it be held that there is a duty on the part of the City to appropriate a fixed amount from its general fund for the maintenance of the Department that the determination of the amount to be appropriated is purely in the discretion of the Commission Council and that the power to fix the pay of the men in the department is left to the discretion of the Board of Commissioners of the Fire Department. In support of this contention, the defendants cite authorities that mandamus will lie only to enforce a clearly recognized right and to compel the performance of a ministerial duty with respect to that right. Counsel for the plaintiffs have cited authorities to the effect that mandamus will lie in cases of abuse of discretionary powers. We see no necessity to review the decisions cited by both parties in this respect because in view of our determination the lower court merely enforced a constitutional mandate. This being the case, the contentions advanced and the authorities cited are not pertinent.

The plaintiffs contend that the lower court erred in rejecting their claims for back pay. In support of this contention they cite authorities from the common law and

other states dealing with laches. This court has recognized estoppel by laches in a number of cases and the doctrine is well established in this State. We have refused to grant mandamus or to entertain the claims of employees, clerks, policemen and school teachers for reinstatement when suits were instituted a year or more after their dismissal. State ex rel. McCabe v. Police Board, 107 La. 162, 31 So. 662; Louisiana Railway & Navigation Co. v. Town of Coushatta, 122 La. 1079, 48 So. 532; State ex rel. Koehl v. Sewerage and Water Board, 179 La. 117, 153 So. 533; State ex rel. Lutz v. Sewerage and Water Board, 179 La. 742, 155 So. 10; State ex rel. Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830; State ex rel. McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834.

■ In view of the fact that this court has recognized the doctrine of estoppel by laches and enunciated the principles upon which it is based, it is not necessary to consider the authorities cited by the plaintiffs. At the most they could only be persuasive. The decisions of this court would control. If the doctrine of estoppel by laches is applicable where there has been an unreasonable delay in making a claim to be reinstated to a position it certainly would be applicable to the plaintiffs' claims for back pay. For a number of years, from 1935 to 1939, the plaintiffs have accepted the pay as fixed by the Board of Commissioners without protest, except on two occasions, and have permitted an unreasonable delay to elapse before making this claim for back pay. The plaintiffs have permitted the City to spend the funds for other purposes and have neglected to timely file their claims. To permit them now to recover would impose a hardship on the City and its affairs. The plaintiffs have not proceeded with diligence. They have permitted an unreasonable delay to elapse before asserting their claims. The lower court properly sustained the plea of estoppel.

There being an error in the judgment of the lower court in the computation of the per capita amount derived from the avails of the half mill, it is ordered that the judgment of the lower court is amended by striking out that part which attempts to compute the per capita amount derived from the avails of the half mill of the tax. As thus amended the judgment is affirmed at the cost of the defendants-appellants.

HIGGINS and LAND, JJ., absent.

On Rehearing.

PER CURIAM.

In stating the defendant's contention in this case, we inadvertently omitted the word "prior" on page 10 of our opinion. The defendant's contention was that "the court erred in ordering the City to appropriate out of the general fund a sum adequate to maintain the department, and in no event, an amount less than that required prior to 1921." Therefore, our original opinion is corrected to read accordingly.

With this explanation and correction, the application for a rehearing is refused.