11 EDWIN A. LOMBARD, Judge.
FACTS AND PROCEDURAL HISTORY
Plaintiffs, the Fraternal Order of Police, Crescent City Lodge No. 2 (“FOP”), filed *37 an action in Civil District Court in 1980 against the City of New Orleans seeking to recover additional wages allegedly due since January 1, 1971 under Article 14, Section 25 of the Louisiana Constitution of 1921. Article 14 provided for the City of New Orleans to levy a separate property tax, the proceeds of which were to be used exclusively for the purpose of an increase in pay of the officers of both the New Orleans Fire and the New Orleans Police Departments.
Plaintiffs complain that the portion of the millage intended by constitutional amendment of 1928 to increase their pay, which millage the City collects under this provision, was paid to them in a lump sum annually until January 1, 1971. At that time, the City began to include the payment in the regular paycheck received by plaintiffs on a bi-weekly basis, effectively eliminating the increase in pay.
Plaintiffs assert that the voters of New Orleans, by constitutional amendment in 1928, voted to tax themselves additionally in order to provide an increase in pay to police and fire fighters. During the time period between the amendment and the change in 1971, the millage that was collected went directly to the police and fire 12fighters by means of the annual lump sum distribution. When the City changed the manner of paying that millage to the current method of distributing the funds every paycheck, the City also effectively reduced the salaries of the police and fire fighters because they are now being paid the same salary as other City employees in the same civil service classification, but a part of the fire fighters’ and police officers’ salaries are being paid out of the millage; specifically, $8.31 per paycheck comes from the millage, which releases that amount in the general fund for other uses. This practice means that the emergency responder professionals who, by constitutional amendment, are supposed to receive a pay increase out of the millage funds, are actually being paid on the same pay scale as the City desk — job employees. Thus, plaintiffs argue, the City is violating the constitutional provision by not paying them their regular salaries out of the general fund and then giving them their constitutionally-guaranteed increase in pay out of the special millage funds; i.e., payment of an additional $8.31 per paycheck from the millage.
Conversely, the City asserts that the method change in 1971 only showed a breakdown of the gross pay, which information had not been contained in the former pay stubs. The City also maintains that the plaintiffs have not proven that the new (current) method of payment reduced their salaries and it argues that it has not done so. Moreover, the plaintiffs are mistaken in their assertions that they are entitled to receive $8.31 more per paycheck than other City employees. The City refers to its accounting records, arguing that it has done nothing illegal and that the CPA who reviewed the records found them to be accurate.
The City admits, however, that the plaintiffs’ assertion about the CPA’s findings are in part correct. In its Reply Brief, the City states: “Mr. Howerton [the CPA] did make the statement that the year-end distribution of a lump sum amount ^constituted a “supplement” to their salaries, and the distribution in biweekly paychecks did not.” The City argues that the supreme court specifically authorized the bi-weekly payment method in Ziemer v. City of New Orleans, 195 La. 1054, 197 So. 754, 758 (1940). Additionally, the City defends its position by stating: “Mr. Howerton found no evidence that the City had reduced the existing police pay and substituted millage funds instead.”

Actions of the District Court

On December 21, 1998, plaintiffs filed a motion for partial summary judgment. *38 The City also filed a motion for summary judgment. Arguments on the cross motions were heard on February 4, 2000. The district court denied the City’s motion for summary judgment and granted the plaintiffs’ motion for partial summary judgment. The court concluded that the City had improperly reduced the salaries of the class members by the improper use of the dedicated millage. The district court entered judgment against the City of New Orleans for $3,376,740.00, which represented the proceeds of the dedicated millage tax that was not paid to police officers exclusively as an increase in pay as provided for by Act 260 of 1928, amending Article 14, Section 25, Louisiana Constitution of 1921, for the years 1980 through 1994. The court reserved for a later determination the amount due for the years after 1994.
The district court entered judgment and notice of signing on April 27, 2000. On June 5, 2000, the City filed a motion to certify the judgment as a final judgment for purposes of immediate appeal pursuant to Louisiana Code of Civil Procedure art. 1915. The trial court signed the order designating the judgment as a final, ap-pealable judgment on June 20, 2000, however, the notice of signing the order |4was not issued until November 7, 2000. The City filed the instant appeal on November 8, 2000.
Plaintiffs filed a motion to dismiss the appeal as untimely.[1] This court, by its April 8, 2002 Order, dismissed the appeal as untimely. The Louisiana Supreme Court granted the City’s writ application on November 8, 2002, reversed this court’s judgment dismissing the appeal, and reinstated the appeal.[2]
ANALYSIS
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In its Reasons, the trial court detailed certain findings of fact, most of which were uncontested, to which this court must give due deference. The legal rulings of the lower court are not afforded the same deference, but are included in the list as the trial court judgment set forth.
The court stated its findings as follows:
1. The sum of $8.31 that has been paid to police officers of the City of New Orleans as a part of their regular biweekly pay checks since the filing of suit in 1980, represents a part of the proceeds of the dedicated millage taxlsprovided for by Act 260 of 1928, amending Article XIV, Section 25, Louisiana Constitution of 1921.
2. From undisputed evidence submitted by the City, it appears that the *39 police officers’ pay scale was integrated with the civil service pay scale of other city employees in the early 1970s prior to the filing of this suit.
3. According to the undisputed facts submitted by the FOP, the $8.31 included in each bi-weekly check forms a part of the regular (civil service) City of New Orleans base pay of each police officer instead of being paid exclusively as an increase in pay as directed by the constitutional amendment.
4. It further appears from the undisputed facts submitted by the FOP, that each police officer receives the identical base pay as other city employees in the same civil service pay range who do not receive the $8.31 from the dedicated millage tax.
5. According to the undisputed facts, the total amount of dedicated millage tax that has been used to pay police officers a portion of their regular civil service designated base pay is $3,376,740.00 for the years from 1980 through 1994.
6. As to the law, according to the Louisiana Supreme Court holding from this case in 1982: “It is highly unlikely that the Legislature and the voting citizens intended for the City, for example, to use the tax proceeds to give policemen and firemen cost of living increases in regular salary while using the general fund to provide a simultaneous increase to other City employees.”
|fi7. The Louisiana Supreme Court further held: “It is much more likely that the Legislature and the voters intended that an overall general increase (or decrease) in salaries for all City employees in a particular year would affect only the regular salaries payable out of the general fund and that the avails of the annual tax collections for each year would be used as a supplement to that base pay.”
8. The issue of laches is not before the court at this time because the Motion for Partial Summary Judgment filed by plaintiffs only appertains to the years since the filing of this law suit in 1980 through 1994.
In support of its position on appeal, FOP also cites Fraternal Order of Police Crescent City Lodge No. 2 v. City of New Orleans, 419 So.2d 929 (La.1982), wherein the court amended the. holding of both lower courts, which had dismissed plaintiffs’ petition for failure to state a cause of action and concluded that the constitutional amendment only provided for a one-time increase in pay for the police and fire fighters. In amending, the supreme court reasoned that although the method of payment did not necessarily have to be the prior annual lump sum method, but whatever method the City chose, it must use the millage tax to provide an increase in the pay of the police.[3] Fraternal Order of Police Crescent City Lodge No. 2 v. City of New Orleans, 419 So.2d at 931. The court stated that the mere fact that the method of paying the police had changed did not necessarily mean that the salaries had been reduced: “The overall pay plan for *40 policemen after |71971 may include the tax proceeds as a supplemental increase in regular salary over the amount which otherwise would be base pay.” Id. The court concluded, however, that insufficient facts were available in the plaintiffs’ petition to be able to decide the issue.[4]
The plaintiffs contend that the above dicta and reasoning from the Louisiana Supreme Court put the defendants on notice in 1982 that it must pay the police officers’ regular salaries from the general fund and the increase in pay from the millage, or tax proceeds. The City admittedly still has not changed its practices.
The City, however, argues that there was no evidence presented that it reduced the pay of the police officers by its present method of paying them bi-weekly and including the millage tax $8.31 in the regular paycheck. We disagree.
By constitutional amendment, and statutory counterpart, the voters and the Legislature decided that the emergency responders — police and fire fighters — would be given an increase in pay over other City employees. To accomplish that goal, the citizens voted to tax themselves to provide the special millage funds for the contemplated pay raise. If that intention had been meant to be a one-time, or time-limited, pay increase, the voters would have stated as such. This fact has already been decided by the Louisiana Supreme Court. Fraternal Order of Police Crescent City Lodge No. 2 v. City of New Orleans, 419 So.2d 929 (La.1982).
Similarly, if the City were paying the officers the $8.31 as a supplement to their regular base pay, then simple logic indicates that the officers would be |smaking $8.31 more per paycheck than their counterpart City employees in the same civil service classification and pay range. The evidence, however, does not demonstrate this fact, but rather the opposite. The police are earning the same amount as other City employees in equivalent civil service classifications.
Much effort was made by the City to shift the focus of this analysis onto whether the funds were taken from the general fund or from somewhere else. The City invited the plaintiffs to show that the City has reduced the general fund and replaced it with millage money. The City argued that the controlling issue is “where does the money come from?” and suggested that the plaintiffs could only prevail if they establish with certainty that the millage funds replaced the money paid out of the general fund. We disagree.
The plaintiffs have shown, to the trial court and to this court, that the police officers are making the same amount as other City employees in the same civil service pay range. It is also admitted that the officers’ pay is comprised, in part, of the $8.31 millage funds and the remainder of the salary from the City’s general fund. Thus, the $8.31 millage used to pay each police officer frees up that amount in the general fund for the City to use elsewhere. Certainly, that result was not intended by the voters or the Legislature: the citizens would not have taxed themselves in order to give the City of New Orleans an undes-ignated slush fund. Rather, the millage tax proceeds have one purpose only: to provide an ongoing salary increase to police and fire fighters. We conclude that this purpose envisioned by the citizens has not been implemented by the City.
Moreover, the goal of providing the City’s emergency responders with additional compensation is sound public policy. *41 Surely we want to encourage the |9hiring and retention of emergency workers who place their lives at risk for the safety of other citizens.
Accordingly, we affirm the detailed findings of the trial court and believe that the law cited by the trial court was correctly applied to the facts of this case.[5] The millage funds, $8.31 per pay period, have constituted a portion of the officers’ salary, rather than a supplement, or increase to that regular salary. As such, the City owes the officers the $8.31 per paycheck for the period from the filing of this suit in 1980 to 1994, as ordered by the trial court. CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

. Plaintiffs argued that the judgment of April 27, 2000 was a final judgment; therefore the delays for motion for new trial and appeal began to run from that date (i.e., the notice of signing on April 27, 2000) and, therefore, the defendants' appeal was untimely. The City .contended that the judgment was interlocutory, therefore, not appealable until it was certified by the trial judge, in accordance with La. C.C.P. art. 1915B. The City maintained, additionally, that the mailing of the notice of signing was the triggering event for the delay period to commence for purposes of filing the appeal and, therefore, its appeal was timely filed.

. The supreme court resolved the timeliness issue by first making the determination that because there was no statutory provision specifying when a motion to certify a partial judgment must be filed, it was error for this court to impose any time frame upon the defendants for the filing of their motion to certify. Secondly, the high court held that the delay for filing an appeal of a partial judgment begins on the day the notice of signing to certify is mailed. This court’s judgment was reversed and the defendants’ appeal was reinstated.

. The procedural posture of the case when it was considered by the supreme court in the referenced case was the dismissal of the plaintiff’s petition on defendants’ exception of no cause of action, which judgment was affirmed by this court. Fraternal Order of Police Crescent City Lodge No. 2 v. City of New Orleans, 409 So.2d 411 (La.App. 4th Cir. 1982). This court, in 1982, reviewed only whether the plaintiffs’ petition stated a cause of action against the defendants and affirmed the trial court’s dismissal, concluding that the constitutional amendment providing for an increase in pay constituted merely a one-time increase.

. The supreme court affirmed the trial court’s ruling that the petition failed to state a cause of action, but amended the judgment to give the plaintiffs thirty (30) days to attempt to remove the grounds of the defendants’ objection by filing a supplemental and amended petition alleging additional facts. Id. at 932.

. We affirm the decision of the trial court regarding the issue of laches for the reasons specified by the trial court.